UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SONY INTERACTIVE ENTERTAINMENT
LLC,

          Plaintiff,

     v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A,

          Defendants.

No. 26 C 4430

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Sony Interactive Entertainment LLC ("Sony") filed this suit alleging infringement of PlayStation-related trademarks and copyrights by 73 online sellers. Finduat moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and moves to sever or dismiss without prejudice for improper joinder pursuant to Federal Rule of Civil Procedure 21. R. 48. For the following reasons, the motion to dismiss for failure to state a claim is denied. The motion to sever or dismiss without prejudice for improper joinder is entered and continued.

### Background

Sony is a videogame and entertainment company which, along with Sony Interactive Entertainment Inc. ("SIE Inc."), develops, markets, and sells PlayStation videogame consoles, video games, and associated consumer goods. R. 1 ¶ 5. The PlayStation brand has achieved global success and notoriety, with hundreds of

1

millions of console units and video games sold worldwide. *Id.* ¶¶ 6–7, 13. Sony and SIE Inc. own several registered trademarks and copyrights. *Id.* ¶¶ 8, 9, 14. Relevant here and depicted below, Trademark Reg. No. 5,748,316 is assigned to Class 28 and consists of a square, a triangle, a circle, and the letter "X" each within a circle in a diamond arrangement. R. 1-1 at p. 73 ("Mark").[1]



Finduat operated an Amazon storefront, through which it advertised, offered, and sold a silicone keychain party favor, as depicted below.

---

[1] Class 28 includes: "Hand-held games with liquid crystal displays; hand-held units for playing electronic games other than those adapted for use with television receivers only; protective carrying cases specially adapted for handheld video games; parts and accessories exclusively used with hand-held games with liquid crystal display; consumer video game consoles for use with an external display screen or monitor; game controllers for consumer video game consoles; controllers for consumer game consoles; handheld units for playing electronic games, other than those adapted for use with an external display screen or monitor; hand-held games with liquid crystal display." R. 1-1 at p. 73.



R. 3-1 at p. 51.

Sony brought this suit alleging trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114 (Count I), false designation of origin in violation of 15 U.S.C. § 1125(a) (Count II), and copyright infringement in violation of 17 U.S.C. §§ 106 and 501 (Count III) in connection with the defendants' alleged use of 19 trademarks and three copyrights. Finduat moves to dismiss for failure to state a claim and moves to sever or dismiss for improper joinder.[2] The former motion is addressed herein, while the latter motion is continued.

---

[2] Sony attaches to its brief a declaration from counsel and five accompanying exhibits, repeating certain facts otherwise alleged in the complaint and offering several brand new facts about the PlayStation controller. R. 57. The Court declines to consider the new facts presented by Sony at this stage. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (A "complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Phillips v. Prudential Ins. Co. of Am.*,

## Legal Standard

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (citation omitted). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

---

714 F.3d 1017, 1019–20 (7th Cir. 2013) (allowing the Court to consider "information that is subject to proper judicial notice" along with additional facts set forth in a brief opposing dismissal "so long as those facts are consistent with the pleadings").

## Discussion

Sony brings claims against Finduat for trademark infringement, counterfeiting, and false designation of origin. To state any of one these claims, Sony must plausibly allege that the Mark is protectable and Finduat's use of the Mark is likely to cause confusion among consumers. *Illinois Tamale Co., Inc. v. LC Trademarks, Inc.*, 164 F.4th 648, 655 (7th Cir. 2026) (citing *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001)); *Mercis, B.V. v. Schedule A*, No. 24 C 5853, 2025 WL 540509, at *4–5 (N.D. Ill. Feb. 19, 2025) (citing cases).

### A. Protectable Mark

Finduat first contends that Sony does not sufficiently plead that the Mark is protectable. Sony pleads that the Mark is registered, which creates a presumption of validity. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 644 (7th Cir. 2020). To rebut the presumption of validity, Finduat argues that the Mark is not protectable because it is functional. A product feature is considered "functional" and thus ineligible for Lanham Act protection if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* (citation omitted). Courts generally consider the following factors to determine whether a design is functional:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; (5) the effect of the design feature on an item's quality or cost. *Id.* (citation omitted).

*Id.* (citation omitted).

Functionality is an affirmative defense. *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010); *Chartwell Studio, Inc. v. Team Impressions, Inc.*, No. 19-CV-06944, 2023 WL 11930229, at *2 (N.D. Ill. Apr. 4, 2023) (citing cases); 15 U.S.C. § 1115(b)(8). It is well-settled that "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Because "affirmative defenses frequently turn on facts not before the court at [the pleading] stage, . . . dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Id.* (cleaned up). Sony has not pleaded itself out of court by alleging facts that conclusively establish that the Mark is functional. There are no allegations regarding any utility patent, the utilitarian properties of the action buttons or associated advertising, alternative designs, or the effect of the buttons on the cost or quality of PlayStation products. Dismissal based on the functionality defense is inappropriate at this stage.

### B.  Likelihood of Confusion

Finduat further argues that Sony does not adequately plead that the use of the Mark is likely to cause confusion among consumers. The likelihood of confusion inquiry focuses on whether consumers are likely to attribute the parties' products to a single source. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019). Courts consider the following seven factors:

> (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the

> strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another.

*Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015); *Mercis*, 2025 WL 540509, at *5 (applying the Seventh Circuit's seven-factor test at the motion to dismiss stage) (citing cases). No one factor is dispositive, but the similarity of the marks, the intent of the defendant, and the evidence of actual confusion are "especially important." *Sorensen*, 792 F.3d at 726 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 899 (7th Cir. 2001)).

Here, Sony alleges that all of the defendants' use of the listed PlayStation trademarks in advertising, offering, and selling infringing products is likely to cause and has caused confusion. R. 1 ¶ 32. That highly generalized allegation, standing alone, does not plausibly suggest a likelihood of confusion. But Sony incorporates by reference into its complaint screenshot evidence of Finduat's Amazon listing for the allegedly infringing product. *Id.* ¶ 23; R. 3 at pp. 50–53. That listing, alongside the allegations about all of the defendants' conduct, permit consideration of the seven factors.

*Factor 1*: As to the similarity of the marks, the Court compares the marks "in light of what happens in the marketplace" and "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Sorensen*, 792 F.3d at 726. The buttons in the top right-hand corner of the keychain are nearly identical to the Mark, with the same four symbols each within a circle and arranged in the same diamond shape. What's more, the keychain is shaped like—and

described in the listing as—a videogame controller. Because a consumer would likely associate the keychain with the source of the Mark, this factor weighs in Sony's favor.

*Factor 2*: As to the similarity between products, the Court asks "whether the products are the kind the public attributes to a single source." *Ty*, 237 F.3d at 899. Finduat distinguishes its "cheap silicone party pendants" from Sony's videogame controllers. But the keychains unmistakably resemble the controllers, and Sony alleges that it sells a variety of other "related consumer goods," which may reasonably include keychains, party favors, or similar products. R. 1 ¶¶ 5, 8. Taken together, these allegations plausibly suggest that consumers would attribute the parties' products to a single source, and this factor weighs in Sony's favor.

*Factor 3*: As to the area and manner of concurrent use, the Court asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Ty*, 237 F.3d at 900. Finduat contends that its keychains have a different marketing channel than Sony's premium gaming hardware. Although Sony does not detail its marketing or distribution channels, the Court can reasonably infer from the complaint that Finduat uses the terms "video game controller" in the title for its product, R. 3-1 at p. 51, to "trigger" its listing when consumers search for genuine PlayStation products, R. 1 ¶ 25. This allegation that Finduat leverages Sony's marketing channel tips this factor slightly in favor of Sony.

*Factor 4*: As to the degree of care, courts generally assume that the more widely accessible and inexpensive a product is, the more likely that consumers will exercise a lesser degree of care. *CAE*, 267 F.3d at 683. As alleged, Finduat's keychains are sold

on a widely accessible online sales platform for $1.29 per unit ($12.99 for a pack of ten). R. 3 at p. 15. This suggests that consumers use a lesser degree of care in buying Finduat's product, which supports a greater likelihood of confusion. *Sorensen*, 792 F.3d at 731. Therefore, this factor weighs in Sony's favor.

*Factor 5*: As to the strength of the Mark, the Court considers its "distinctiveness," i.e., its tendency to identify the products sold under it as derived from a particular source. *Id.* ("A mark's strength ordinarily corresponds to its economic and marketing strength."). Sony alleges that PlayStation trademarks have been the subject of continuous use and millions of dollars in marketing, and consumers widely recognize and exclusively associate products bearing the marks as high-quality products sourced from Sony. R. 1 ¶ 12–13. The complaint further details the global popularity of PlayStation products, with hundreds of millions of units sold, and the goodwill of the PlayStation brand. *Id.* ¶¶ 6, 13. Defendant's suggestion that the Mark is weak when applied to a keychain mischaracterizes the inquiry and disregards the alleged substantial economic and marketing strength of the Mark. This factor weighs in Sony's favor.

*Factor 6*: As to actual confusion, the Court looks to the confusion of reasonable consumers. *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1016 (N.D. Ill. 2014). While Sony states that Finduat's use of the Mark has caused confusion, R. 1 ¶ 32, there are no factual allegations offered in support. This factor thus weighs in Finduat's favor. However, it is not dispositive because no evidence is required at the

pleading stage, and "evidence of actual confusion is not required to prove that a likelihood of confusion exists." *CAE*, 267 F.3d at 685.

*Factor 7*: For this factor, the Court examines whether Finduat is attempting to "pass off" its product as having come from Sony. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001). Sony generally alleges that Finduat has engaged in "willful, intentional, and unauthorized use of the Mark." R. 1 ¶ 36. Although some defendants allegedly use aliases, content, and images to trick consumers into believing they are authorized retailers, the screenshot evidence does not indicate Finduat is among them. *Id.* ¶ 24; R. 3-1 at p. 51. Because the generalized allegation of willfulness is "conclusory and not supported by factual allegations from which the Court can reasonably infer the alleged intent and knowledge," it does not "weigh particularly heavily in favor of or against likelihood of confusion." *Mercis*, 2025 WL 540509, at *5.

In sum, because most of the factors weigh in Sony's favor and the only factor weighing in Finduat's favor—the evidence of actual confusion—is of lesser value at the pleading stage, the Court finds the allegation of a likelihood of confusion to be plausible and denies dismissal on this basis.

### C. Registration Classification

Finduat lastly argues that Sony cannot plausibly allege trademark infringement because keychains are not among the class of goods noted on the Mark's registration. Patent and Trademark Office's ("PTO") classifications exist solely for administrative purposes and do not limit the substantive rights of a trademark's

owner. *See* 15 U.S.C. § 1112 ("The Director may establish a classification of goods . . . for convenience of [PTO] administration, but not to limit or extend the applicant's or registrant's rights."); *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 269 (2d Cir. 2011). Instead, infringement turns on the likelihood of confusion, which may exist despite the dissimilarity of the parties' goods. *E.g.*, *CAE*, 267 F.3d at 679 (explaining that "the rights of an owner of a registered trademark extend to any goods that might be, in the minds of consumers, 'related,' i.e., put out by a single producer"). Contrary to Finduat's assertion, neither 15 U.S.C. § 1114 nor *Packman* provide otherwise. As discussed, Sony sufficiently alleges that Finduat's use of the Mark is likely to cause confusion. The Mark's PTO classification does not warrant dismissal.[3]

### Conclusion

For the foregoing reasons, the motion to dismiss for failure to state a claim is denied. The motion to sever or dismiss without prejudice for misjoinder is entered and continued.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: July 1, 2026

---

[3] Sony did not, as Finduat claims, ignore this argument and thereby concede that the complaint fails to state a claim. Rather, Sony directly addressed the likelihood of confusion, which is the proper inquiry in assessing the plausibility of the claims.

11